UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GLENNA MARY DURAM,

    Petitioner,

v.

JEREMY HOWARD,

    Respondent,

_____/

Case No. 2:20-CV-13429
HONORABLE SEAN F. COX
CHIEF UNITED STATES DISTRICT JUDGE

### OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Glenna Mary Duram, ("Petitioner"), confined at the Huron Valley Women's Correctional Facility in Ypsilanti, Michigan, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging her convictions for first-degree premeditated murder, MICH. COMP. LAWS § 750.316(1)(a), and felony-firearm, MICH. COMP. LAWS § 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted following a jury trial in the Newaygo County Circuit Court of killing her husband Martin Duram. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals's opinion, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See e.g. Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> As defendant's neighbor and close friend was heading to work at 7:30 a.m. on May 12, 2015, she heard two shots fired. She was not alarmed, however, because she knew Martin hunted in the area. Later that day she received a call from her husband, who reported that Martin, with whom he regularly communicated, was not responding to his texts. After work, the neighbor went over to defendant's house. She knocked on the outer doors and windows. All of the doors were locked. No one appeared to be home except for the dog, which she could hear barking in the master

1

bedroom when she called its name. Later that evening, the neighbor sent defendant a text asking if she and Martin were home. She received no response.

The next morning, the neighbor went back over to defendant's house. The home was still quiet except for the dog barking, and there was no sign of defendant or Martin. At around 3:30 p.m., the neighbor decided to check again to see if defendant was home. This time, defendant's front door was unlocked. The neighbor entered the house and saw that the living room was in disarray. She walked into the master bedroom, observed and stepped over some blankets on the floor, and found Martin lying on the floor in a pool of blood. She realized that defendant was lying underneath the blankets. Defendant's face was pale, and her hair was matted in blood. Believing both Martin and defendant to be dead, the neighbor ran to a nearby house to summon help.

The neighbor returned with three firemen who had been responding to an unrelated incident nearby. As she walked back into defendant's bedroom, the neighbor thought defendant's head was now in a slightly different position than it was before, but she said nothing, thinking it was simply her imagination. When police arrived, the neighbor undertook to assist them by tending to the dog, which had curled up next to Martin and was growling at the strangers. When the neighbor heard an officer speak to defendant, she turned in that direction and saw defendant sit upright. The police officer testified that when he arrived at the scene, defendant did not appear to be dead. As he felt for her pulse, she suddenly opened her eyes, sat upright, and became combative. She was subdued and transported by ambulance to the hospital. Defendant's neurosurgeon testified regarding two bullet wounds on the right side of defendant's skull, near her ear; they appeared to be several hours old, were non-lethal, and could possibly result in no loss of consciousness, allowing the person to be ambulatory. Martin was confirmed to be dead at the scene. On the master bed were several fired cartridge casings, an unfired cartridge. On the bedroom floor was a key to Martin's gun safe.

Police searched the home and found the murder weapon, a .22 caliber Ruger revolver,[1] a pillow with holes in it, defendant's Kyocera cell phone, Martin's LG cell phone, as well as other items that were seized as evidence. Defendant's blood was found on items in the living room and kitchen. Police later seized a manila envelope that Martin's adult children found in the living room. The manila envelope contained three white envelopes, one each addressed to defendant's daughter, defendant's ex-husband, and defendant's son; a forensic document examiner deemed the letters to be in defendant's handwriting. In the letters, defendant apologized for reasons that were vague, apologizing in one letter for "messing up." Evidence was also admitted at trial regarding significant financial problems

---

[1] The gun was linked to the murder by way of identifying marks on the cartridge casings, as well as a holster, found in the gun safe, that was believed to be for the Ruger. (Footnote original).

defendant had been attempting to hide from Martin, including an impending home foreclosure.

Dr. Brian Hunter performed an autopsy and concluded that Martin died from multiple gunshot wounds. There were five gunshot wounds, some of which were fired at close range and passed through his lungs and heart. Dr. Hunter deemed the manner of death a homicide.

Defendant moved to suppress admission of data extraction reports of the cell phone usage for the LG and Kyocera cell phones and objected to testimony by the detective who performed the extractions regarding what he found. The trial court denied defendant's motion and admitted the evidence. The detective testified that he performed a logical extraction, a file system extraction, and a physical extraction on defendant's Kyocera cell phone and obtained data from 9:00 p.m. on May 11, 2015 to 7:00 a.m. on May 12, 2015. A text message was sent from defendant's cell phone at 11:40 p.m. on May 11, 2015, to a recipient whose number bore the label "mom." At 3:28 a.m. on May 12, 2015, the cell phone received a text from "mom" that responded to the 11:40 p.m. text message. Then the user of the Kyocera cell phone opened the cell phone's web browser and proceeded to access the following websites relating to Ruger guns:

3:32 a.m.: "Ruger Safety Announcements"

3:33 a.m.: "Ruger Inside and Out

3:34 a.m.: "Ruger Safety Bluebook"

3:35 a.m.: "Ruger Safety Announcements"

At 4:48 a.m., the cell phone user sent a text message to "mom" that stated: "Love you. Sorry." Nine seconds later, the user accessed a web page titled "Ruger New Model Single-Six, Single Action Revolvers." No further web activity or outgoing text messages occurred after 4:55 a.m. on May 12, 2015. The detective testified that neither the LG cell phone nor the Kyocera cell phone were password protected.

*People v. Duram*, No. 340486, 2019 WL 1924935, at *1–2 (Mich. Ct. App. Apr. 30, 2019)(additional footnote omitted); *lv. den.* 505 Mich. 941, 936 N.W.2d 306 (2019).

Petitioner filed a petition for writ of habeas corpus, which was held in abeyance so that petitioner could exhaust additional claims in the state courts. *Duram v. Howard*, No. 2:20-CV-13429, 2021 WL 1087440, at *1 (E.D. Mich. Mar. 22, 2021).

Petitioner filed a post-conviction motion for relief from judgment with the trial court pursuant to M.C.R. 6.500, *et. seq.,* which was denied. *People v. Duram,* No. 16-11473-FC (Newaygo Cty.Cir.Ct., June 15, 2022). The Michigan appellate courts denied petitioner leave to appeal. *People v. Duram,* No. 362784 (Mich.Ct.App. Oct. 11, 2022); *lv. den.* 986 N.W.2d 912 (Mich. 2023).

The case was subsequently reopened and petitioner was permitted to file an amended habeas petition. (ECF No. 15).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court violated Glenna Mary Duram's constitutional protections of due process by admitting unfairly prejudicial hearsay evidence from an internet website. The admission of the hearsay evidence was unfairly prejudicial to defendant-appellant and misleading to the jury. The trial court should have excluded the evidence.

II. Both defense attorneys provided [constitutionally] ineffective assistance as trial counsel for failing to call any witnesses on Ms. Duram's behalf, allowing biased jurors to remain, failing to file any pretrial motions to exclude evidence, and [failing] to procure expert forensic, DNA, and medical experts on Ms. Duram's behalf.

III. Both defense attorneys provide[d] [constitutionally ineffective] assistance as appellate counsel for failing to raise the issues of merit in issue I above and for failing to advise Ms. Duram of the potential conflict of interest and consequences of having [] trial attorneys act as appellate counsel on her behalf.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

Petitioner's second and third claims were raised in her post-conviction motion for relief from judgment. The judge denied the motion because petitioner had failed to establish cause and

5

prejudice, as required by M.C.R. 6.508(D)(3) for failing to raise these claims on her appeal of right. The judge, however, never addressed the merits of the claims. (ECF No. 19-20, PageID. 1971). The Michigan appellate courts denied petitioner's post-conviction appeal in one-sentence orders without adjudicating the merits of the claims.

When a state court fails to adjudicate a habeas petitioner's claim on the merits, as was the case with petitioner's second and third claims, a federal court is required to review that claim *de novo*. *See Cone v. Bell,* 556 U.S. 449, 472 (2009); *See also McKenzie v. Smith,* 326 F. 3d 721, 726 (6th Cir. 2003). With respect to petitioner's second and third claims, "there are simply no results, let alone reasoning, to which this court can defer. Without such results or reasoning, any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile." *McKenzie,* 326 F. 3d at 727. Accordingly, petitioner's second and third claims will be subject to *de novo* review.

### III. Discussion

**A. Claim # 1. The evidentiary law claim.**

Petitioner first contends that the trial court abused its discretion by admitting into evidence the titles of the websites her Kyocera cell phone accessed on the morning of the murder. Petitioner argues that such information was inadmissible hearsay, unfairly prejudicial, and violated her right to due process.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially

6

rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

The Michigan Court of Appeals determined that the titles of the websites were not hearsay, because they were not assertions in that the titles of the websites were incapable of being true or false and nothing indicated that petitioner accessed the websites "with the intent of expressing a fact or opinion." *People v. Duram*, 2019 WL 1924935, at * 3 (internal citations omitted).

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 F. App'x 147, 150 (6th Cir. 2003); *See also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002)(petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights). This Court cannot second guess the Michigan Court of Appeals' decision that this evidence was not hearsay under Michigan law.

Petitioner, however, also argues that this evidence was more prejudicial than probative.

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *See also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Petitioner's claim that this evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle petitioner to habeas relief. The Sixth Circuit observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing

7

context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F. 3d 536, 551 (6th Cir. 2012)(emphasis original). The Michigan Court of Appeals concluded that the cellphone evidence was relevant and admissible to establish that petitioner deliberately and with premeditation killed her husband, in that "reasonable jurors could infer from the evidence that defendant had accessed webpages related to the murder weapon in contemplation of killing Martin." *People v. Duram,* 2019 WL 1924935, at * 3. This Court must defer to that determination.

In any event, appraisals of the probative and prejudicial value of evidence are entrusted to the sound discretion of a state trial court judge, and a federal court considering a habeas petition must not disturb that appraisal absent an error of constitutional dimensions. *See Dell v. Straub*, 194 F. Supp. 2d 629, 645 (E.D. Mich. 2002). So long as a state court's determination that evidence is more probative than prejudicial is reasonable, a federal court on habeas review will not overturn a state court conviction. *See Clark v. O'Dea,* 257 F.3d 498, 503 (6th Cir. 2001).

The Michigan Court of Appeals concluded that the website evidence was probative as to the elements of deliberation and premeditation required to sustain a first-degree murder conviction. *People v. Duram*, 2019 WL 1924935, at * 4. The Michigan Court of Appeals reasoned that "The detective's testimony that the cell phone user accessed the Ruger webpages over the course of more than an hour could support a jury's inference that defendant approached Martin's murder with deliberation and premeditation." *Id.* The Michigan Court of Appeals further concluded that the evidence was not more prejudicial than probative in light of the substantial additional evidence of premeditation and deliberation:

> The Ruger found at the scene and linked to the murder was a single-action revolver, which required the shooter to cock the hammer each time before pulling the trigger. Martin had been shot multiple times, including twice through a pillow. This meant that defendant had to position the pillow, consciously and deliberately cock the

> hammer, fire, and consciously and deliberately cock the hammer again, then fire. Considering this additional, highly probative evidence of defendant's state of mind and deliberation, defendant's accessing Ruger websites would not be given undue or preemptive weight. Simply put, its significant probative value was not substantially outweighed by the danger of unfair prejudice. Therefore, the trial court did not err in admitting the evidence.

*Id.*

The Michigan Court of Appeals' decision is reasonable, precluding relief.

Petitioner also claims that the admission of this evidence violated her right to due process.

Respondent argues that this portion of petitioner's claim is procedurally defaulted because she did not object at the trial level that the admission of this evidence violated her right to due process. The Michigan Court of Appeals concluded that this portion of petitioner's claim was unpreserved because it was raised for the first time on appeal and would thus be reviewed for plain error. *People v. Duram*, 2019 WL 1924935, at * 4.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). However, to be credible, such a claim of innocence requires a

9

petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

The Sixth Circuit has ruled that "where a straightforward analysis of settled state procedural default law is possible, federal courts cannot justify bypassing the procedural default issue." *Sheffield v. Burt*, 731 F. App'x 438, 441 (6th Cir. 2018).

Although petitioner objected to the admission of this evidence at trial, she did not argue that the admission of this evidence violated her right to due process, but merely that it was inadmissible under the Michigan Rules of Evidence.

Michigan law requires defendants in criminal cases to present their claims in the trial courts in order to preserve them for appellate review. *See People v. Carines,* 460 Mich. 750, 761-64; 597 N.W.2d 130 (1999). Under Michigan law, "To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v. Thorpe*, 504 Mich. 230, 252, 934 N.W.2d 693 (2019). By failing to object to the admission of this evidence on the ground that it violated her due process rights, petitioner failed to properly preserve this portion of her first claim for appellate review. The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's due process subclaim does not constitute a waiver of the state procedural default. *Seymour v. Walker*, 224 F. 3d 542, 557 (6th Cir. 2000). Instead, this court should view the Michigan Court of Appeals' review of the claim for plain error as enforcement of the procedural default. *Hinkle v. Randle*, 271 F. 3d 239, 244 (6th Cir. 2001).

Petitioner offered no reasons for her failure to properly preserve her due process claim at the trial level. Petitioner did not raise a claim of ineffective assistance of counsel, or any other reason, to excuse the procedural default. By failing to raise any claim or issue to excuse the

procedural default, petitioner "has forfeited the question of cause and prejudice." *Rogers v. Skipper*, 821 F. App'x 500, 503 (6th Cir. 2020).

Finally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider her defaulted claim as a ground for a writ of habeas corpus despite the procedural default. Petitioner is not entitled to relief on her first claim.

**B. Claims # 2 and # 3. The ineffective assistance of counsel claims.**

Petitioner in her second and third claims alleges she was denied the effective assistance of trial and appellate counsel.

Respondent argues that these claims are procedurally defaulted because petitioner raised them for the first time in her post-conviction motion for relief from judgment and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for not raising these claims on her appeal of right.

Petitioner was represented on her appeal of right by the same two attorneys who represented her at trial. Petitioner would most likely be excused from raising her ineffective assistance of trial counsel claim on her appeal of right because the same two attorneys served as her trial and appellate counsel. *See Hicks v. Collins*, 384 F. 3d 204, 211 (6th Cir. 2004); *See also Harding v. Bock*, 107 F. App'x 471, 478 (6th Cir. 2004). Petitioner could not have procedurally defaulted her ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that she had to raise this claim. *Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).

A defendant must satisfy a two prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by

11

the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. See *Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

Petitioner first argues that trial counsel were ineffective for failing to file pre-trial motions. Counsel did, in fact, make an oral motion to objecting to the prosecutor's intent to admit the webpage cellphone evidence, which was denied. (ECF No. 19-14, PageID. 1753-74). Petitioner, however, fails to identify what additional pre-trial motions should have been filed and for what purpose, nor has she offered any argument on how the outcome of the case would have been different had counsel filed additional pre-trial motions. Petitioner has not identified any additional specific pretrial motions that her counsel should have filed that reasonably would have resulted in a different verdict and thus has failed to show that they were ineffective. *See Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997).

Petitioner next claims that trial counsel was ineffective for failing to call defense witnesses, particularly expert witnesses to rebut the testimony of the prosecution witnesses.

Petitioner is not entitled to relief on her claim because she failed to provide to the Michigan courts or this Court an affidavit from any proposed witnesses concerning their proposed testimony and willingness to testify on petitioner's behalf. Conclusory allegations of ineffective assistance

of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). In particular, a habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Keith v. Mitchell,* 455 F. 3d 662, 672 (6th Cir. 2006). Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond her own assertions as to whether there were witnesses who would have testified and what the content of their testimony would have been. In the absence of such proof, petitioner is unable to establish that she was prejudiced by counsel's failure to call the witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Moreover, with respect to her claim that trial counsel was ineffective for failing to call expert witnesses for the defense, the Supreme Court has noted that a counsel's strategic decision as to whether to hire an expert is entitled to a "'strong presumption' of reasonableness." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021). "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense." *Harrington v. Richter*, 562 U.S. at 111.

Although counsel did not hire any expert witnesses, counsel did vigorously cross-examine the various prosecution witnesses on a number of subjects.

At trial, the prosecution presented six expert witnesses: (1) David Hayhurst, forensic DNA analysis and bloodstain splatter expert; (2) Sarah Rambadt, forensic DNA analysis expert; (3) Detective-Sergeant Jason Sinke, fingerprint analysis expert; (4) Lieutenant Jeff Crump, ballistics expert; (5) Detective-Lieutenant Mark Goff, handwriting identification expert; and (6) Dr. Brian Hunter, forensic pathology expert. The prosecution also presented testimony from two medical providers, Dr. Hayden Boyce and a physician's assistant, Roman Grant.

Defense counsel questioned Dr. Hunter about whether he was able to determine when the gunshot injuries had occurred. (ECF No. 19-10, PageID. 1065-67). Counsel's questions and Dr. Hunter's answers left an undefined period of time between the shooting and when Martin Duram's body was discovered, raising the question of whether petitioner shot him or whether another person was the actual shooter.

With respect to the testimony of Dr. Boyce, counsel elicited testimony that there was no evidence of gunshot residue which would demonstrate close contact gunshots. But in order for petitioner to have shot herself, the firearm would have had to touch the back of her head. Thus, in effect, counsel obtained testimony that the lack of deposit of gunpowder residue was inconsistent with close contact of the firearm with petitioner's head. Counsel also questioned Dr. Boyce on whether petitioner was unconscious after she shot herself, or whether she could have moved around. Dr. Boyce testified that it was impossible to know what happened after petitioner was shot. (ECF No. 19-13, PageID. 1485-87).

Defense counsel cross-examined Detective Goff. Counsel obtained admissions from Detective Goff that he did not examine the letters to determine when they were written and he admitted that the letters were not dated. Detective Goff acknowledged he did not know when petitioner wrote these letters. (ECF No. 19-13, PageID. 1647).

Counsel elicited favorable testimony from Detective Sinke that petitioner's fingerprints were not recovered from the .22 caliber Ruger. Detective Sinke admitted that petitioner's fingerprints were not found on either of the two cell phones recovered at the crime scene. (ECF No. 19-12, PageID. 1302-04).

Defense counsel questioned Mr. Hayhurst on his DNA sampling and testing procedures. Counsel elicited testimony from Mr. Hayhurst that there was no definitive mechanism he could

use to determine how blood splatter occurred. (ECF No. 19-12, PageID. 1361-62). Counsel also obtained an admission from Mr. Hayhurst that a number of blood stains were found on a laundry basket at petitioner's house, but only one stain was tested. (*Id.*, PageID. 1352-54). Mr. Hayhurst also testified that there was no blood found on the firearm and no blood splatter. (*Id.,* PageID. 1358-59). Mr. Hayhurst conceded that because petitioner's body was moved, he was unable to determine what bloodstains on her clothing occurred at the scene and what occurred after. (*Id.*, PageID. 1361).

Counsel questioned the DNA expert, Ms. Rambadt, about whether petitioner was excluded as being the major DNA profile on the gun and cartridges. (ECF No. 19-12, PageID. 1433-1448). Ms. Rambadt noted that the DNA of three or more individuals, including a major male contributor, was recovered from the Ruger handgun. (*Id.,* PageID. 1438-39). Rambadt identified petitioner as a possible contributor to the DNA on the handgun but could not provide a definitive identity statement. (*Id.*, PageID. 1439-40). Rambadt acknowledged that there was a second, unknown major contributor, also unidentified. (*Id.*, PageID. 1441-43). Finally, Rambadt tested a DNA sample swab from cartridges recovered from the crime scene and concluded that the DNA was consistent with a mixture of at least two individuals: a major male contributor and a major unknown donor. Rambadt acknowledged that petitioner was excluded as the major unknown donor. (*Id.*, PageID. 1445-48).

As to Mr. Crump, the ballistics expert, on cross-examination, he admitted that he could not tell that the bullets recovered at the crime scene came from the same Ruger firearm. Instead, he testified that he could identify 75 other firearm manufacturers with similar markings. (ECF No. 19-11, PageID. 1172).

"In many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington v. Richter*, 562 U.S. at 111.  A defense counsel's decision to cross-examine a prosecutor's experts concerning their findings, instead of calling an expert witness for the defense to challenge that expert's conclusions, has at times been held to be a reasonable trial strategy that defeats a habeas petitioner's ineffective assistance of trial counsel claim. *See Tinsley v. Million,* 399 F.3d 796, 806 (6th Cir. 2005); *See also Jackson v. McQuiggin,* 553 F. App'x 575, 580-82 (6th Cir. 2014).  Counsel's decision to cross-examine the prosecution's various experts, in lieu of calling an expert, is a reasonable one that defeats petitioner's claim.

Petitioner finally argues that trial counsel was ineffective when counsel failed to strike two bias jurors from the jury.  Petitioner claims that these two jurors were because they were "against guns" and "open carry."

One of the most essential responsibilities of a defense attorney is "to protect his client's constitutional right to a fair and impartial jury by using *voir dire* to ferret out jurors who are biased against the defense." *Miller v. Francis,* 269 F. 3d 609, 615 (6th Cir. 2001).  However, a defense counsel's actions during *voir dire* are presumed to be matters of trial strategy and cannot serve as the basis of an ineffective assistance of counsel claim unless "counsel's decision is shown to be so ill-chosen that it permeates the entire trial with unfairness." *Id.* at 615-16.

Petitioner is not entitled to relief on her claim because she has not shown that any jurors during *voir dire* indicated that they were against guns or open carry laws.  The Court reviewed the entire portion of the *voir dire* and there is no indication any juror made these statements. (ECF No. 19-7, PageID. 599-755).

To maintain a claim that a biased juror prejudiced him, for purposes of maintaining an ineffective assistance of counsel claim, a habeas petitioner must show that the juror was actually

16

biased against him. *See Hughes v. United States,* 258 F. 3d 453, 458 (6th Cir. 2001); *See also Miller v. Francis,* 269 F. 3d at 616 (when a claim of ineffective assistance of counsel is founded on a claim that counsel failed to strike a biased juror, the defendant must show that the juror was actually biased against him). Petitioner failed to make this showing; she is not entitled to relief on this claim.

Petitioner in her third claim alleges the ineffective assistance of appellate counsel.

Petitioner initially claims that she was denied the effective assistance of appellate counsel, in part, because her trial counsel continued to serve as her attorneys on appeal. The Sixth Circuit has held that a court should not use the presumed prejudice standard set forth in *Cuyler v. Sullivan,* 446 U.S. 335 (1980) in evaluating a claim of an alleged conflict of interest arising from a counsel's successive representation of a defendant at trial and on his or her direct appeal. *See Whiting v. Burt,* 395 F. 3d at 619. Instead, a court must apply the *Strickland* standard to determine whether a defendant was actually prejudiced by appellate counsel's ineffectiveness, even where that appellate counsel was also the defendant's trial counsel. *Id.*

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Petitioner was not denied the effective assistance of trial counsel. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because petitioner was not denied the effective assistance of trial counsel, appellate counsel was not ineffective in failing to raise this claim on petitioner's appeal of right. *See, e.g.,*

17

*Fautenberry v. Mitchell*, 515 F.3d 614, 642 (6th Cir. 2008). Petitioner is not entitled to relief on her third claim.

### IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams*, 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002). The Court further concludes that petitioner should

not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed.R.App. P. 24(a).

### V. ORDER

Based upon the foregoing, **IT IS ORDERED** that:

(1) The petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.** Petitioner will be **DENIED** leave to appeal *in forma pauperis*.

Dated: February 1, 2024

s/Sean F. Cox
Sean F. Cox
U. S. District Judge

I hereby certify that on , the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

s/J. McCoy
Case Manager

19